# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JUDICIAL WATCH, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-2316 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| FBI, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Judicial Watch is a not-for-profit organization that aims to educate the public about government operations and activities. To gain information about the federal government's operations and activities, Judicial Watch frequently files Freedom of Information Act ("FOIA") requests with federal agencies. Because these FOIA requests seek federal records, they inherently rely on the recordkeeping programs that federal agencies must have pursuant to the Federal Records Act ("FRA"). In this case, Judicial Watch contends that Defendant FBI has not conformed with the FRA because it has not established and maintained a recordkeeping program that provides effective controls over non-email electronic messages, including text messages. Judicial Watch thus brings this Administrative Procedure Act ("APA") suit, contending that the FBI's lack of an adequate recordkeeping program for electronic messages is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the FRA. Defendant moves under Federal Rule 12(b)(6) to dismiss Plaintiff's claim. Because the Court finds that Judicial Watch's complaint does not allege facts that make out a plausible claim for relief, it will grant the FBI's motion to dismiss while also granting Plaintiff leave to file an amended complaint.

## II. BACKGROUND

### A. The Federal Records Act[1]

The Federal Records Act consists of a series of statutes that, collectively, "govern[] the creation, management and disposal of federal records."[2] *Citizens for Responsibility & Ethics in Washington v. Pruitt* ("*CREW I*"), 319 F. Supp. 3d 252, 254 (D.D.C. 2018) (quoting *Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282, 284 (D.C. Cir. 1991)). Congress's goal in enacting the FRA was threefold: "(1) 'efficient and effective records management'; (2) '[a]ccurate and complete documentation of the policies and transactions of the Federal Government'; and (3) '[j]udicious preservation and disposal of records.'" *Armstrong I*, 924 F.2d at 284–85 (quoting 44 U.S.C. § 2902).

To execute these objectives, the FRA requires each federal agency to put in place "standards and procedures" that ensure "accurate and complete" documentation of the federal government's policies and transactions. 44 U.S.C. § 2902. The head of each federal agency must "establish and maintain an active, continuing program" for management of that agency's records that provides for, *inter alia*, "effective controls" over the creation, maintenance, and use of records and "cooperation with the Archivist" of the United States in maintaining and disposing of records. *Id.* § 3102. The Archivist of the United States, who serves as the head of the National Archives and Records Administration ("NARA"), plays an important oversight role in this statutory framework: among other responsibilities, the Archivist must issue "standards, procedures, and guidelines with respect to records management." *Id.* § 2904(c)(1). Each

---

[1] In assessing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court may consider any documents attached to or incorporated by reference in the complaint, *see Mpoy v. Rhee*, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014) (citations omitted), and it will thus take into account the National Archives and Records Administration bulletin cited in Plaintiff's complaint.

[2] What is known as the FRA is codified as amended at 44 U.S.C. §§ 2101 *et seq.,* 2901 *et seq.,* and 3101 *et seq*.

agency's recordkeeping program must include "safeguards against the removal or loss of records" that the agency head "determines to be necessary and required by regulations of the Archivist." *Id.* § 3105.

Pursuant to the authority granted by the FRA, the Archivist's detailed regulations set forth agency recordkeeping requirements. *See* 36 C.F.R. §§ 1222.22–1222.34. These regulations stipulate, among other matters, how agencies are to maintain records. *See id.* § 1222.34. Specifically, "[a]gencies must implement a records maintenance program so that complete records are filed or otherwise identified and preserved . . . and permanent and temporary records are physically segregated from each other or, for electronic records, segregable." *Id.* Thus, each agency's records maintenance program must, *inter alia*, "[m]aintain electronic, audiovisual and cartographic, and microform records" in accordance with all other NARA regulations, *id.* §1222.34(b); "[a]ssign responsibilities for maintenance of records in all formats within each agency component," *id.* § 1222.34(c); "[i]ssue appropriate instructions to all agency employees on handling and protecting records," *id.* § 1222.34(e); and separately maintain records and non-record materials, *id.* § 1222.34(f).

Both the FRA and the associated NARA regulations also further specify an agency's duty regarding electronic messaging. The FRA, as amended in 2014, defines "electronic messages" as "electronic mail and other electronic messaging systems that are used for purposes of communicating between individuals." 44 U.S.C. § 2911. This amendment clarifies that "official business conducted using non-official electronic messaging accounts" remains subject to disclosure requirements. *Id.* NARA guidance published in July 2015 sets forth in greater detail the records management requirements that apply to electronic messages, including text messaging, instant messaging or other chat messaging systems, and other similar

3

communications systems. *See* David Ferriero, *Guidance on Managing Electronic Messages*, Bulletin 2015-02 (July 29, 2015), *available at* https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html. This guidance clarifies that electronic messages can be federal records, so long as they are "created or received in the course of agency business." *Id.* "Like all Federal records," any electronic records created or received in the course of agency business "must be scheduled for disposition." *Id.* This requirement applies whether the electronic message in question is created on an official or a personal account, and "[a]gencies must provide clear instructions to all employees on their responsibility to capture electronic messages created or received in personal accounts" to ensure that they satisfy what the FRA demands. *Id.* In short, function, not form or origin, determines what the FRA mandates regarding a particular communication.

## B. Factual History[3]

Plaintiff Judicial Watch is a not-for-profit organization based in Washington, D.C., that aims to "educate the public about the operations and activities of the government and government officials." Compl. ¶ 3, ECF No. 1. To investigate the federal government, Judicial Watch "mak[es] extensive use of" FOIA requests and "often files suit" if the agency does not timely respond to a FOIA request or if it withholds potentially responsive records. *Id.* Defendant FBI is one of the agencies with which Plaintiff has filed FOIA requests in the past, including sixty FOIA requests to the FBI in the year 2018. *Id.* Thirty of the FOIA requests sent to the FBI in the year 2018 specifically sought electronic messages. *Id.* In addition, as of the filing of the instant suit in late 2018, Plaintiff had eight pending lawsuits seeking

---

[3] At the motion to dismiss stage, the Court views the evidence in the light most favorable to Judicial Watch. *See United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000) ("At the motion to dismiss stage, the only relevant factual allegations are the plaintiffs', and they must be presumed to be true.").

communications of FBI officials, officers, or employees, two of which specifically sought electronic messages. *Id.*

In the suit before this Court, Judicial Watch argues that the FBI's recordkeeping policy for preservation of non-email electronic messages falls short of what the FRA demands. *Id.* at 1. Plaintiff asserts that the FBI "does not have a recordkeeping program in place that provides effective controls over the maintenance of electronic messages, including text messages." *Id.* ¶ 11. Because it lacks a recordkeeping program that conforms to the FRA, Judicial Watch contends that it "is unable to obtain electronic messages through FOIA requests to the FBI." *Id.* ¶ 15. Plaintiff thus brings an APA challenge alleging that the FBI's failure to institute an effective recordkeeping program for electronic messages is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the FRA. *Id.* ¶ 19.

Defendant FBI's recordkeeping program for all records, including electronic messages, is set forth in a Records Management Policy Guide ("Policy Guide").[4] *See* Def.'s Mot. Dismiss,

---

[4] In general, a court will not accept facts from a defendant's filings in a motion to dismiss at the pleading stage. However, a court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *See Angelex Ltd. v. United States*, 123 F. Supp. 3d 66, 82 n.11 (D.D.C. 2015) (internal quotation mark and citation omitted). Moreover, a court may take judicial notice of publicly-available materials, including government policies. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (citation omitted). Here, Defendant urges the Court to take notice of the FBI's Policy Guide. *See* Def.'s Mem. P. & A. Supporting Mot. Dismiss ("Def.'s Mem. P. & A.") 2 n.1, ECF No. 8-1. Defendant makes two arguments: First, in challenges to the adequacy of an agency's recordkeeping policy pursuant to the FRA, other courts in this Circuit have found an agency's official records management policy to be incorporated by reference. *Id.* (citing *CREW I*, 319 F. Supp. 3d at 261). Second, as Defendant notes, the FBI's Policy Guide is publicly available with minor redactions on the FBI Vault website. *Id.* Judicial Watch does not raise any objections to this request, and Plaintiff's opposition includes lengthy discussion of and quotation from the Policy Guide. *See generally* Pl.'s Mem. P. & A. Opposing Def.'s Mot. to Dismiss ("Pl.'s Mem. P. & A."), ECF No. 10. Thus, the Court will consider the Policy Guide.

5

Ex. A, ECF No 8-2.[5] The unclassified version of the Policy Guide was last revised on July 1, 2015, *id.* at i, and runs to 34 pages (exclusive of appendices). The Policy Guide applies to all FBI personnel, *id*. § 1.5; *see also id.* § 3, and sets forth the responsibilities of all personnel regarding creation and maintenance of "adequate, complete, accurate, and proper documentation" of all official agency business, including proper filing, recording, and disposition of "all records made or received while in the FBI's service," *id.* § 2.8.

The Policy Guide begins with overarching directives for all FBI personnel. First, it defines what constitutes a record. *Id.* § 4.2. The agency's definition quotes directly from the FRA at § 3301 and then explains what determines whether or not a document is a "record." *See id.* (enumerating criteria and stating that a document that contains information may be considered a record, "regardless of medium"). In addition, the Policy Guide contains further specification of transitory and nontransitory records, as well as what distinguishes a record from a non-record. *Id.* §§ 4.3–4.5. The Policy Guide emphasizes that compliance with these requirements is the burden of each FBI employee: "[e]very employee . . . has the responsibility to adequately document activities, decisions, policies, and transactions conducted to further the FBI's mission and to do so according to FBI policies." *Id.* § 4.7.1.

The Policy Guide subsequently addresses different types of records including, as is pertinent here, electronic records, including text messages. With regard to creation and maintenance of such records, "[a]ll FBI personnel bear responsibility for identifying, capturing and moving electronic records into a recordkeeping system." *Id.* § 4.8.14; *see also* Def.'s Mem. P. & A., Ex. B, Declaration of Michael G. Seidel ("Seidel Declaration") ¶ 6, ECF No. 8-3 ("[T]o the extent that FBI personnel create records by using text messages to conduct official agency

---

[5] The Court references the Policy Guide's original pagination and section divisions.

business, the messages are required to be uploaded to an official recordkeeping system.").[6] The Policy Guide requires all personnel to "import electronic communications that are nontransitory records into an [electronic recordkeeping] system." Def.'s Mot. Dismiss, Ex. A. at ¶ 4.8.14; *see also* Seidel Decl. ¶ 12 ("When an employee creates an agency record, . . . via text message or otherwise, they are obligated to import it into an FBI filing system."). Individual employees bear this responsibility because text message communications are not "completed directly in and automatically integrated into FBI filing systems." Seidel Decl. ¶ 12.

The Policy Guide also includes four pages specifying FBI personnel's recordkeeping responsibilities regarding electronic mail ("email"). *See* Def.'s Mot. Dismiss, Ex. A, §§ 4.8.15–4.8.19. This portion of the Policy Guide details how FBI personnel are to address "UNet E-mail" communications, *see id.* § 4.8.15.1, nontransitory record emails, *see id.* §§ 4.8.16–4.8.17, transitory record emails, *see id.* § 4.8.18, and nonrecord emails, *see id.* § 4.8.19, respectively. If the email is a nontransitory record that must be retained for more than 180 days, *id.* § 4.8.16, then FBI personnel must import it into the appropriate case file in Sentinel (the FBI's official central recordkeeping system, *see id.* §§ 4.8.3), *id.* § 4.8.17. This step is necessary because many email systems such as Microsoft Outlook or UNet mail are "communication systems, not electronic recordkeeping systems." *Id.* § 4.8.17. As such, FBI personnel must undertake specific further steps, as the Policy Guide explains, to import any nontransitory record email into the FBI's electronic recordkeeping system. *See id.*

---

[6] The Seidel Declaration was generated in a separate, still-pending case, *Danik v. U.S. Dep't of Justice*, Case No. 17-cv-1792 (TSC) (D. Dist. of Columbia), that addresses text messages on FBI-issued devices. Because Plaintiff refers to the Seidel Declaration in its complaint, *see* Compl. ¶ 12, the Court considers this attachment to Defendant's filing to be incorporated by reference. *See Angelex Ltd.*, 123 F. Supp. 3d at 82 n.11. Furthermore, the Court may take judicial notice of publicly filed documents in related litigation. *See Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citation omitted).

7

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Notwithstanding this liberal construal, the court deciding a Rule 12 motion must parse the complaint for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility requirement means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

The court ruling on a Rule 12(b)(6) motion to dismiss "may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is

produced not by the parties." *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013) (internal citations and quotations omitted). The court may also take "judicial notice of facts on the public record . . . when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted." *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (citation omitted).

## IV. ANALYSIS

Before addressing Defendant's motion to dismiss Plaintiff's claim, the Court will discuss two threshold justiciability issues: first, whether judicial review of the FRA claim is permitted and second, whether Judicial Watch has standing to bring its claim. For the reasons set forth below, the Court finds that it has jurisdiction to review the merits of Plaintiff's APA claim.

### A. Justiciability

#### 1. Judicial Review of the FRA

In addition to contesting the factual underpinnings of Judicial Watch's FRA challenge, Defendant contends that Plaintiff's claim fails as a matter of law because the FRA "preclude[es] private litigants from suing directly to enjoin agency actions in contravention of agency guidelines." Def.'s Mem. P. & A. 6. Judicial Watch counters that it brings no such claim; rather, it raises a "facial challenge" that "challenges Defendant's failure to provide effective controls over the maintenance of electronic records, excluding emails." Pl.'s Opp'n 2 n.1. Because the FRA bars private rights of action regarding specific agency employees' destruction of records, yet the statute permits APA claims as a means for private individuals to challenge the adequacy of the agency's recordkeeping programs, *see Armstrong I*, 924 F.2d at 294–95, Plaintiff has the better argument.

This Circuit's precedent squarely controls what types of FRA claims a private litigant may bring. Whether a private litigant may bring a FRA claim depends on what type of agency action is at issue. The *Armstrong* court distinguished between three different kinds of agency action: (1) the disposition of records; (2) the agency head's or Archivist's enforcement duties under the FRA; and (3) the creation of recordkeeping guidelines and directives in the first instance. *See CREW I*, 319 F. Supp. 3d at 257 (quoting *Armstrong v. Bush*, ("*Armstrong I*"), 924 F.2d at 291, 294–95). For the first type, an agency official's "destr[uction of] records in contravention of the . . . recordkeeping guidelines and directives," Congress provided a detailed administrative enforcement scheme in 44 U.S.C. § 3106 that constitutes the "only . . . remedy for the improper removal of a record from the agency." *Armstrong I*, 924 F.2d at 291 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 148 (1980)). Hence, "the FRA does not contain an implied [private] cause of action" to challenge deletion or removal of records from an agency. *Id.* at 292 (citing *Kissinger*, 445 U.S. at 148); *see also Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency*, 67 F. Supp. 3d 23, 31 (D.D.C. 2014).

However, emphasizing the "presumption in favor of judicial review," the *Armstrong* court also concluded that the FRA does not preclude private suits involving the other two types of agency action. *Armstrong I*, 924 F.2d at 291 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967)). In instances where the agency head or the Archivist sits by "while an agency official destroys or removes records in contravention of [an] agency guideline[]," a private litigant can sue and thereby challenge the agency head or Archivist's failure to "fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action" in the manner contemplated by the FRA. *Id.* at 295–96. Moreover, and of note in the instant case, a private litigant may challenge the adequacy of the agency's recordkeeping program in the first

instance. *Id.* at 292–93. For either of these types of agency action, the APA provides a "jurisdictional hook for a suit alleging noncompliance with the FRA." *CREW I*, 319 F. Supp. 3d at 257; *see also Competitive Enter. Inst.*, 67 F. Supp. 3d at 32 (distinguishing between "reviewable challenges to an agency's record-keeping guidelines under the APA, and unreviewable challenges to the agency's day-to-day implementation of its guidelines").

Here, Judicial Watch's sole count is an APA challenge with reference to the FBI's "failure to conform to the Federal Records Act concerning the preservation of electronic messages (excluding email)." Compl. 1. Plaintiff's claim does not rest on an allegation that FBI officials have acted in contravention of the FBI's guidelines. Rather, Plaintiff's complaint centers on the lack of a "record keeping program that provides effective controls over the maintenance of electronic messages." *Id.* ¶¶ 17–21. Plaintiff's pleading, then, flies in the face of Defendant's argument that Judicial Watch is challenging employees' compliance with the established FBI "Recordkeeping Policy's requirement that [employees] preserve all federal records, regardless of format or medium." Def.'s Mot. Dismiss 6. In Judicial Watch's own words, "Plaintiff does not challenge the systemic noncompliance of FBI employees. It solely challenges Defendant's failure to provide effective controls over the maintenance of electronic messages, excluding emails." Pl.'s Mem. P. & A. 2 n.1.

Reading the plain text of Judicial Watch's complaint, the Court concludes that it has jurisdiction over Plaintiff's APA claim. Judicial Watch's claim expressly contests the adequacy of the FBI's recordkeeping policy for a specific category of records: electronic records, excluding email. This is precisely the sort of reviewable APA challenge to an agency's recordkeeping guidelines that *Armstrong* authorized. In the instant case, moreover, there is a

sufficiently final agency action to permit review under the APA.[7] In contrast to suits in which a party did not challenge a reviewable "agency action" under the APA, Judicial Watch is not trying to make "a broad programmatic attack" on the FBI's compliance with the FRA. *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't Homeland Sec.*("*CREW II*"), 387 F. Supp. 3d 33, 48–49 (D.D.C. 2019) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)). Judicial Watch in no way asks the Court to insert itself into the FBI's day-to-day recordkeeping practices or otherwise police the agency's "unofficial policy of refusing to create records." *See id.* at 53. Rather, Plaintiff challenges the adequacy of Defendant's official Policy Guidelines with respect to electronic records other than email. This is just the sort of reviewable challenge to an agency's recordkeeping guidelines that *Armstrong* permits. *See* 924 F.2d at 291–92; *see also Competitive Enter. Inst.*, 67 F. Supp. 3d at 234.

2. Standing

Even where, as here, a defendant does not contest a court's subject matter jurisdiction over a plaintiff's claim, "Article III standing is jurisdictional," and the Court has "an 'independent obligation to be sure of [its] jurisdiction.'" *Am. Rivers v. Fed. Energy Regulatory Comm'n*, 895 F.3d 32, 40 (D.C. Cir. 2018) (quoting *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) (citation omitted)). "[A]s the party invoking federal jurisdiction," the plaintiff "bears the burden of establishing" that it has standing. *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 178 (D.C. Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish standing, the plaintiff must show (1) that it has suffered a 'concrete and

---

[7] Although neither party raises this point, the Court nonetheless must address it because "[w]hether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). *See also* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

particularized ' injury [, or injury-in-fact,] (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision.'" *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)); *see also Spokeo*, 136 S. Ct. at 1547 (affirming that, at the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating'" each component required to establish that it has standing (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975))).

In addition to the "irreducible constitutional minim[a]" required to establish Article III standing, *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)), "the question of standing" also involves "prudential limitations on its exercise." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Warth,* 422 U.S. at 498 (citation omitted)). One such prudential requirement is the "zone of interests" test, which provides "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision . . . invoked in the suit." *Id.* at 155 (citations omitted); *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987) (discussing "zone" test); *Armstrong I*, 924 F.2d at 287 (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) (stating that a plaintiff must meet the zone of interests test to bring an APA claim).

"A court applying the 'zone' test 'must discern whether the interest asserted by a party in the particular instance is one intended by Congress to be protected or regulated by the statute under which suit is brought.'" *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 50–51 (D.C. Cir. 1983) (quoting *Control Data Corp. v. Baldrige*, 655 F.2d 283, 293–94 (D.C. Cir. 1981) (footnote omitted)) (internal citation omitted). To satisfy the zone of interests standard, there must be "some indicia—however slight—that the litigant before the court was intended to be

protected, benefited or regulated by the statute under which suit is brought." *Copper & Brass Fabricators Council, Inc. v. Dep't of the Treasury*, 679 F.2d 951, 952 (D.C. Cir. 1982); *see also Constructores Civiles de Centroamerica, S.A. (CONCICA) v. Hannah,* 459 F.2d 1183, 1189 (D.C. Cir. 1972) ("[S]light beneficiary indicia will suffice to establish [a plaintiff's] right to have review and thus to reach the merits." (citation omitted)). For the reasons set forth below, Judicial Watch alleges specific facts that support the requisite elements of standing, and the Court finds that it has subject matter jurisdiction over Plaintiff's APA claim.

*a. Article III Standing*

To establish Article III standing, a plaintiff must first demonstrate an "injury in fact" that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000). Here, Plaintiff's "injury in fact" rests on the organization's reliance on FOIA requests to accomplish its educational mission. As Judicial Watch explains, to the extent that the FBI's recordkeeping policy for non-email electronic records is inadequate, the organization's FOIA requests do not permit it to obtain "information that would aid its investigations" and further its "educational mission." Compl. ¶ 15. Additionally, Plaintiff "mak[es] extensive use" of FOIA and "often files suit" if the agency "withholds responsive records." *Id.* ¶ 3. Plaintiff references "8 pending lawsuits" seeking "communications of [FBI] officials, officers, or employees," "at least 2" of which "specifically seek electronic messages." *Id*. Plaintiff also describes "over 60 FOIA requests to the FBI" filed in the same year as the instant suit, "at least 30" of which "specifically seek electronic messages." *Id.*

The Court finds that this pleading establishes injury in fact. Judicial Watch points with particularity to individual, concrete FOIA requests and pending litigation regarding the electronic

messages that are implicated in the current suit.  Moreover, the instant facts do not merely allege abstract, hypothetical future FOIA requests.  Rather, Judicial Watch has pending requests at issue, which establish "a real and immediate, not merely speculative, threat of future injury." *Citizens for Responsibility and Ethics in Washington v. Exec. Office of the President*, 597 F. Supp. 2d 48, 61 (D.D.C. 2008) (citation omitted).

As stated previously, Article III also requires the plaintiff to show that the alleged injury in fact "is fairly traceable" to the defendant's challenged conduct.  *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560).  Here, Judicial Watch sets forth the following causal chain: due to the FBI's lack of an adequate recordkeeping policy for electronic messages, the agency does not "provide[] effective controls over the maintenance of electronic messages, including text messages," Compl. ¶ 11, such that Plaintiff cannot rely on FOIA requests to obtain this category of records, *id.* ¶ 15, which "is causing Plaintiff irreparable harm," *id.* ¶ 20.  On these facts, because the alleged injury directly relates back to Defendant's recordkeeping policy, the Court finds that the alleged injury is "fairly traceable to the challenged action of the defendant." *Bennett*, 520 U.S. at 166 (citing *Lujan*, 504 U.S. at 560–61).

Finally, Article III requires a plaintiff to show that the alleged injury in fact is "likely" to be redressed by "a decision granting the plaintiff the relief it seeks."  *Elec. Privacy Info. Ctr.*, 878 F.3d at 376–77 (internal quotation mark and citation omitted).  Here, Plaintiff asserts that its "irreparabl[e] harm[]" will continue "unless and until Defendant establishes a recordkeeping program that provides effective controls over the maintenance of electronic messages."  Compl. ¶ 21.  Judicial Watch thus seeks, in addition to attorneys' fees and costs, declarative relief finding an APA violation and directing "defendant to establish and maintain" an adequate recordkeeping program "so that Plaintiff may obtain electronic messages subject to Plaintiff's

FOIA requests." *Id.* at 4. Because such an order would directly address the alleged injury in fact, the Court finds that Judicial Watch has established redressability.

### b. *Prudential Standing Considerations*

Turning now to the prudential component of standing, Judicial Watch's complaint has ample "indicia" that Plaintiff is within the "zone of interests" that Congress sought to protect in establishing the FRA. Judicial Watch is a not-for-profit organization that aims to obtain government records for public education. Compl. ¶ 3. It seeks access to records to gain information about "the operations and activities of the government and government officials." *Id.* And Plaintiff now brings its APA claim to ensure that it can "obtain electronic records through FOIA requests to the FBI." *Id.* ¶ 15. This Circuit has previously held that "the statutory language and legislative history" of the FRA "indicate[s] that one of the reasons that Congress mandated the creation and preservation of federal . . . records was to ensure that private researchers," like Judicial Watch, "would have access to the documentary history of the federal government." *Armstrong I*, 924 F.2d at 287; *see also Am. Friends*, 720 F.2d at 57 ("[T]he legislative history of the records acts supports a finding that Congress intended, expected, and positively desired private researchers . . . whose rights may have been affected by government actions to have access to the documentary history of the federal government."). In short, Plaintiff's research-based, documentary objective is in the FRA zone, such that it may bring an APA claim. Thus, for the reasons set forth above, the Court concludes that Judicial Watch has satisfied the required constitutional and prudential components of standing and will next exercise its subject matter jurisdiction to address Defendant's motion to dismiss Plaintiff's APA claim.

## B. Motion to Dismiss[8]

To survive Defendant's motion to dismiss Plaintiff's APA claim, Judicial Watch must allege facts that could plausibly lead the court to find the contested policy "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' because they permit the destruction of record material that should be maintained." *Armstrong I*, 924 F.2d at 297 (quoting 5 U.S.C. § 706(2)(A)). Defendant argues that Plaintiff cannot allege such facts because the FBI's policy "on its face satisfies the requirements of the FRA." Def.'s Mem. P. & A. 7. Defendant emphasizes that the Policy Guide "explicitly 'applies to all records, regardless of physical form or characteristics'" and sets out clear mandates with which all FBI personnel must comply. *Id.* at 8 (quoting Policy Guide § 4.2.1) (citing Policy Guide § 4.8.14). Plaintiff counters that the Policy Guide is "insufficient and arbitrary" for electronic messages other than emails. Pl.'s Mem. P. & A. 1. Even reading the filings in the light most favorable to Plaintiff, the Court finds that Judicial Watch's complaint does not contain factual allegations that plausibly establish a claim for relief. However, because Plaintiff's opposition includes further facts in support of its argument, many of which are directly responsive to the Policy Guide that Defendant attached to its motion to dismiss, the Court will grant Plaintiff leave to file an amended complaint.

As stated previously, "[j]udicial review under the APA is authorized to determine the adequacy of the [agency's] recordkeeping guidelines and instructions pursuant to the FRA." *Armstrong v. Bush* ("*Armstrong II*"), 139 F.R.D. 547, 549 (D.D.C. 1991) (citing *Armstrong I*, 924 F.2d at 291–93). In assessing whether Plaintiff has plausibly established a claim for relief based on the contention that the FBI's Policy Guide is inadequate, the Court

---

[8] Because the Court construes Plaintiff's complaint as a "facial challenge," and not an enforcement challenge, it does not engage with Defendant's argument that Plaintiff's complaint raises a FRA noncompliance claim that "fails as a matter of law." *See* Def.'s Mem. P. & A. 6–7.

limits itself to the factual allegations contained in the four corners of the complaint and does not consider facts alleged in Plaintiff's opposition brief. *See BEG Inv., LLC v. Alberti*, 34 F. Supp. 3d 68, 85 (D.D.C. 2014) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Coleman v. Pension Benefit Guar. Corp.,* 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) (internal citation omitted))). Here, Judicial Watch's complaint hinges on a single factual allegation: "text messages on [FBI]-issued devices are not automatically integrated into an FBI records system," Compl. ¶ 12 (quoting Seidel Decl. ¶ 8), a policy which is "unique to text messages and other electronic messages," *id.* ¶ 14. Defendant's motion to dismiss rebuts this contention in two ways. First, Defendant emphasizes that the FBI's "overarching recordkeeping policies," as embodied in its Policy Guide, apply to all records "regardless of medium" and universally require "FBI personnel" to "bear responsibility for identifying, capturing, and moving electronic records into [the appropriate] recordkeeping system." Def.'s Mem. P. & A. 3 (quoting Policy Guide §§ 4.2.1, 4.8.14); *see also id.* at 4. Second, Defendant argues that Plaintiff's allegations regarding automatic importation undermine Plaintiff's claim. Because "the only difference between the treatment of emails[, which Plaintiff does not challenge,] and the types of electronic messages Plaintiff challenges is that [emails] can be imported directly into recordkeeping systems, and [other electronic messages] cannot," the only reason there would be an issue with record preservation is if "FBI employees failed to comply with the Policy." *Id.* at 9. Defendant accordingly asserts that this aspect of Plaintiff's allegation fails to "state a facial challenge" that is subject to judicial review. *Id.*

Based solely on the facts in the Complaint and the Policy Guide that is incorporated by reference, as previously discussed, Defendant has the better argument. Without more precise factual allegations that highlight *which* particular deficiencies make the challenge to the FBI's

18

policy inadequate, Plaintiff's claims amount to conclusory allegations that the FBI failed to "establish and maintain a recordkeeping program that provides effective controls." Compl. ¶¶ 17–21. These sorts of legal conclusions, standing alone, will not suffice to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678*; see also Twombly*, 550 U.S. at 555. To be sure, Plaintiff's opposition to Defendant's motion to dismiss raises further arguments that are not present in the original complaint. For instance, Plaintiff underscores the Policy Guide's failure to "distinguish between transitory and nontransitory records or even nonrecords" for non-email electronic communications." Pl.'s Mem. P. & A. at 3. Plaintiff's opposition also points to other concrete factual allegations, such as the FBI's "extensive," four-page, single spaced "records management policy for emails" as compared to the "two sentences" devoted to "other types of electronic messages, including text messages." *Id.* at 3–4. And Plaintiff's opposition presses more specific arguments regarding the "automatic importation" of some records as compared to electronic messages.[9] *Id.* at 4. These additional facts would, had they been raised in the original complaint, bear on the Court's disposition of the pending motion, whether or not they ultimately alter the Court's conclusion.

For present purposes, however, the bottom line is that these facts raised only in the opposition cannot and do not enter into the Court's analysis here. On the facts alleged in the complaint, the Court finds that Plaintiff has not made out a plausible claim for relief, and will thus grant Defendant's motion to dismiss. But the Court is also mindful that many of the more specific facts that Plaintiff alleges in its opposition are directly responsive to the Policy Guide, which *Defendant* attached to its motion to dismiss. Although this document is publicly available,

---

[9] Defendant rebuts these arguments in its reply. However, because Plaintiff does not present these factual allegations in its original complaint, the Court will not consider either this factual allegation or Defendant's arguments in rebuttal at this juncture.

the Court finds it unreasonable that Plaintiff's entire suit should be dismissed because it failed to foresee that Defendant's argument would centrally rely on this document. Thus, the Court will grant Plaintiff leave to file an amended complaint.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**, and Plaintiff may file an amended complaint within thirty days. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 4, 2019                                             RUDOLPH CONTRERAS
                                                                     United States District Judge