# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JUDICIAL WATCH, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-2316 (RC) |
| | : | | |
| v. | : | Re Document No.: | 16 |
| | : | | |
| FBI, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

## I.  INTRODUCTION

The Federal Records Act ("FRA") requires federal agencies to establish policies and procedures that ensure efficient and effective records management.  In this case brought under the Administrative Procedure Act ("APA"), Plaintiff, an organization that frequently files Freedom of Information Act ("FOIA") requests, contends that the FBI does not have a recordkeeping program that provides for effective control over non-email electronic messages, including text messages, as required by the FRA.  After the Court granted the FBI's first motion to dismiss for failure to state a claim under Federal Rule 12(b)(6), Plaintiff amended its complaint, adding additional factual allegations about the FBI's recordkeeping policy.  The FBI now moves to dismiss again and argues that Plaintiff still fails to allege sufficient facts to state a plausible claim for relief.  Having considered the amended complaint, the attached FBI recordkeeping policy, and the parties' briefing, the Court agrees with the FBI and finds that Plaintiff fails to state a plausible claim for relief.  Accordingly, for the reasons stated below, the Court grants the FBI's motion.

## II.  BACKGROUND[1]

### A.  The Federal Records Act

The Federal Records Act[2] "governs the creation, management and disposal of federal records."  *Citizens for Responsibility & Ethics in Washington v. Pruitt (CREW I)*, 319 F. Supp. 3d 252, 254 (D.D.C. 2018) (quoting *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991)). The FRA "requires agencies to create 'standards and procedures' in order to ensure '[a]ccurate and complete documentation of the policies and transactions of the Federal Government."  *Id.* at 254–55 (quoting 44 U.S.C. § 2902).  Under the FRA, "[t]he head of each federal agency must 'establish and maintain an active, continuing program' for management of that agency's records that provides for, *inter alia*, 'effective controls' over the creation, maintenance, and use of records and 'cooperation with the Archivist' of the United States in maintaining and disposing of records."  *Judicial Watch*, 2019 WL 4194501, at *1 (quoting 44 U.S.C. § 3102).  The Archivist, who heads the National Archives Records Administration ("NARA"), issues "standards, procedures, and guidelines with respect to records management."  44 U.S.C. § 2904(c)(1).

Pursuant to this statutory authority, the Archivist has promulgated detailed regulations that set forth agency recordkeeping requirements.  *See* 36 C.F.R. §§ 1222.22–1222.34.  The regulations state that "[a]gencies must implement a records maintenance program so that complete records are filed or otherwise identified and preserved . . . and permanent and temporary records are physically segregated from each other or, for electronic records, segregable."  *Id.* § 1222.34.  As a general matter, the regulations state that agencies must

---

[1] The Court assumes familiarity with its previous opinion, *Judicial Watch, Inc. v. FBI*, No. 18-cv-2316, 2019 WL 4194501 (D.D.C. Sep. 4, 2019), and only highlights the background most relevant to the motion currently before the Court.

[2] What is known as the FRA is codified as amended at 44 U.S.C. §§ 2101 *et seq.*, 2901 *et seq.*, and 3101 *et seq.*

establish records management controls that ensure reliability, integrity, usability, preservation of content, proper context, and a logical structure. *See id.* § 1236.10. While NARA's regulations lay out additional requirements for email records, *see id.* § 1236.22, other types of electronic records must be kept in a recordkeeping system that meets the general requirements for all electronic information recordkeeping systems as described in 36 C.F.R. § 1236.10. *See id.* § 1236.24. NARA's guidance clarifies that "electronic messages can be federal records, so long as they are 'created or received in the course of agency business.'" *Judicial Watch*, 2019 WL 4194501, at *2 (quoting David Ferriero, *Guidance on Managing Electronic Messages*, Bulletin 2015-02 (July 29, 2015), https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html). The guidance further explains that "[a]gencies must provide clear instructions to all employees on their responsibility to capture electronic messages created or received in personal accounts" in addition to messages created on official accounts. *Guidance on Managing Electronic Messages*, Bulletin 2015-02 (July 29, 2015).

### B. Procedural History

Plaintiff filed its amended complaint on September 12, 2019. *See* Am. Compl., ECF No. 15. The amended complaint explains that "electronic messages must be captured and managed in compliance with the FRA," but that "[t]he FBI [] has failed to establish and maintain a recordkeeping program that provides effective controls over non-email electronic messages, including text messages." *Id.* ¶¶ 10, 11. Plaintiff alleges that "[t]he FBI has the technological capability to preserve and manage text messages automatically for FRA purposes," *id.* ¶ 12, but rather than utilize this technology, the FBI "instead relies upon its personnel to incorporate their text messages into a recordkeeping system," *id.* ¶ 14. Plaintiff further alleges that the policy is unique to text messages and other electronic messages and that emails are "automatically

incorporated into FBI filing systems." *Id.* ¶ 15.  Plaintiff argues that "[t]he FBI's recordkeeping

program treats emails differently than all other electronic messages," *id.* ¶ 17, and gives little

attention to non-email electronic communications, which only receive a "two sentence long"

reference compared with the "almost four, single-spaced pages" dedicated to email, *id.* ¶¶ 17, 18.

Plaintiff claims that this does not amount to "a recordkeeping program that provides effective

controls over the maintenance of non-email electronic messages." *Id.* ¶ 19.  As such, Plaintiff

claims the recordkeeping program violates the FRA and amounts to arbitrary and capricious

agency action under the APA.  *Id.* ¶¶ 20–25.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain

statement of the claim" in order to give the defendant fair notice of the claim and the grounds

upon which it rests.  Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate

likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.

*See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The complaint's factual allegations are to be

taken as true, and the court is to construe them liberally in the plaintiff's favor.  *See, e.g.*, *United

States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Notwithstanding this

liberal construal, the court deciding a Rule 12 motion must parse the complaint for "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  This plausibility requirement means that a plaintiff's factual allegations "must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56

(citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

The court ruling on a Rule 12(b)(6) motion to dismiss "may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies."  *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013) (internal citations and quotations omitted).  The court may also take "judicial notice of facts on the public record . . . when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted."  *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (citation omitted).

## IV.  ANALYSIS

For an FRA claim brought under the APA to survive a motion to dismiss, Plaintiff must allege facts that could plausibly lead the court to find that the contested policy is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' because [it] permit[s] the destruction of record material that should be maintained."  *Armstrong*, 924 F.2d at 297 (quoting 5 U.S.C. § 706(2)(A)).  This standard of review encourages courts to defer to the agency's expertise.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014) (quoting *State Farm*, 463 U.S. at 43). To state a proper claim under the APA, a plaintiff must allege facts that, if true, plausibly establish that the agency action is arbitrary and capricious. *See James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 284 (D.C. Cir. 2000); *Akpan v. Cissna*, 288 F. Supp. 3d 155, 165 (D.D.C. 2018); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 78 (D.D.C. 2015).

When ruling on the FBI's first motion to dismiss, the Court explained that Plaintiff's complaint "hing[ed] on a single factual allegation: 'text messages on [FBI]-issued devices are not automatically integrated into an FBI records system,' a policy which is 'unique to text messages and other electronic messages.'" *Judicial Watch*, 2019 WL 4194501, at *9 (quoting Compl. ¶¶ 12, 14, ECF No. 1). Because the complaint failed to "highlight *which* particular deficiencies make the challenge to the FBI's policy inadequate," the Court found that Plaintiff's claims amounted to "legal conclusions" that "standing alone, will not suffice to withstand a motion to dismiss." *Id.* at *9 (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555) (emphasis in original). The Court then noted several factual assertions made in Plaintiff's briefing that were not present in the complaint. *See id.* For example, Plaintiff's briefing explained that the FBI's policy failed to distinguish between transitory and nontransitory records[3] for non-email electronic communications. *Id.* Plaintiff's briefing also pointed to the extensive FBI policy for record management of emails compared to the very short section on

---

[3] According to NARA regulations on emails, a transitory record has a "very short-term retention period of 180 days or less" and, in consultation with NARA, may be maintained "on the electronic mail system itself, without the need to copy the record to a paper or electronic recordkeeping system." 36 C.F.R. § 1236.22(c).

other types of electronic messages.  *Id.*  The Court stated that "[t]hese additional facts would, had they been raised in the original complaint, bear on the Court's disposition of the pending motion, whether or not they ultimately alter the Court's conclusion."  *Id.*  By allowing Plaintiff to amend the complaint, the Court gave Plaintiff an opportunity to raise these, and any other, additional facts in support of its APA claim.  Plaintiff added factual allegations to the complaint and also attached the recordkeeping policy used by the FBI.[4]

A brief review of the relevant portions of the recordkeeping policy attached to the amended complaint is warranted.  *See* Am. Compl. Ex. A, FBI's Records Management Policy Guide ("Policy"), ECF No. 15-1.  The Policy recites the definition of a "record" from the FRA and notes that

> specific mediums, platforms, and technologies change over time; however, the determination about what constitutes a record remains the same: it is based on content, not form.  Communications using advanced electronic tools and media may be records, depending on their content.  This [Policy] applies to all records, regardless of physical form or characteristics.

Policy § 4.2.  The Policy also provides overarching definitions of nontransitory records, transitory records, and nonrecords.  *See id.* §§ 4.3–4.5.  The Court understands these definitions to apply to records in any form, including non-email electronic communications.  The section titled "Capturing and Preserving Electronic Records" states:

> All FBI personnel bear responsibility for identifying, capturing, and moving electronic records into a recordkeeping system.  To ensure proper preservation, personnel must import electronic communications that are nontransitory records into an [electronic record keeping] system such as Sentinel.[5]  Whenever possible, personnel should import electronic communications in the format in which they

_____

[4] The Court may consider the document attached to the amended complaint as an exhibit when evaluating the FBI's motion to dismiss without converting it to a motion for summary judgment.  *Busby*, 932 F. Supp. 2d at 133–34.

[5] According to the Policy, Sentinel "is a next generation information and case-management system" that "moved the FBI from a primarily paper-based recordkeeping system to an electronic records management system."  Policy § 4.8.3.

were generated, otherwise known as "native format." If an electronic communication cannot be imported in its native format (such as a voice message), it should be preserved in another format . . . in the appropriate recordkeeping system, such as Sentinel.

*Id.* § 4.8.14. The Policy also explains that, with respect to email communications, FBI personnel must "import nontransitory record e-mails to the appropriate case file in Sentinel." *Id.* § 4.8.17. Based on this portion of the Policy, the Court understands that FBI personnel must import emails to the recordkeeping system in a similar manner to other non-email electronic communications.

Despite the new factual allegations, the FBI argues in the present motion that Plaintiff still fails to state a claim. For example, Plaintiff added an allegation that the FBI has the technological capability to automatically incorporate non-email electronic communications into its recordkeeping system. *See* Am. Compl. ¶¶ 12–13. The FBI says this is irrelevant because the policy "provides that FBI employees must preserve all records, regardless of format" and that "the technological capability to remove a step in the process for preserving a record text message does not bear on the Policy's facial efficacy." Def.'s Mem. Supp. Mot. Dismiss at 5–6, ECF No. 16-1. In any event, the FBI argues that "it is not the provenance of the courts to determine which technological practices agencies must adopt." *Id.* at 6. The FBI attacks the allegation that the recordkeeping policy treats email communications with more depth than non-email electronic communications by stating that the "relative detail of a records management policy is not the measure of whether it complies with the FRA" because "[a] policy is compliant so long as it does not 'permit the destruction of record material that should be maintained.'" *Id.* at 7 (quoting *Armstrong*, 924 F.2d at 297). Moreover, the FBI explains that the Policy reiterates over and over that the content of a record, not its form, dictates whether a record should be preserved. *See id.* The FBI also takes issue with Plaintiff's contention that the policy does not distinguish between transitory and nontransitory records for non-email electronic communications. *See id.* at 8–9.

This is plainly wrong, the FBI says, because the policy makes this distinction as a general matter for all records.[6]  *See id.*

In a short opposition, Plaintiff argues that the amended complaint alleges sufficient facts to state a claim.  Plaintiff states that because "[the FBI] automatically integrates emails but not non-email electronic messages into its recordkeeping system . . . [the FBI's] policy concerning non-email electronic messages is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the FRA."  Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 4, ECF No. 17. Plaintiff explains that the "lawsuit challenges [this] policy in conjunction with [the FBI] failing to provide its personnel with sufficient and necessary guidance to ensure non-email electronic messages are being maintained."  *Id.*  Plaintiff argues that the "two sentences long" treatment of non-email electronic communications, especially when compared with the treatment of email communications, demonstrates that the recordkeeping policy is "grossly lacking" with respect to those types of non-email electronic communications.  *Id.* at 5.

The Court finds that Plaintiff's amended complaint does not state a plausible claim for relief.  The new factual assertions, when accepted as true, do not plausibly establish that the FBI recordkeeping policy violates the FRA or that it amounts to arbitrary and capricious agency action.  For example, Plaintiff added the factual assertion that the "FBI has the technological capability to preserve and manage text messages automatically for FRA purposes."  Am. Compl. ¶ 12.  But this assertion adds little, if anything, to Plaintiff's original allegation that the Policy is deficient because it does not automatically integrate text messages into its recordkeeping system. *See Judicial Watch*, 2019 WL 4194501, at *9 (quoting Compl. ¶¶ 12, 14).  The amended

---

[6] The FBI also asserts that Plaintiff's claim that emails are automatically incorporated into a recordkeeping system is plainly contradicted by the Policy attached to the amended complaint.  *See id.* at 5 n.4; *see also* Policy § 4.8.17.

complaint does not explain why not automatically preserving text messages makes the FBI's policy inadequate.  Indeed, contrary to Plaintiff's assertions,[7] the Policy itself requires FBI personnel to manually import emails that meet the definition of nontransitory records.  *See* Policy § 4.8.17.  But even assuming that the FBI does automatically incorporate emails into its recordkeeping system, it does not follow that all other electronic communication records that can be automatically imported must be or else the recordkeeping policy is inadequate.  Nothing in the FRA or NARA's regulations requires agencies to adopt the most advanced technologies for recordkeeping or technologies that will automatically preserve records, and the Court is in no position to dictate what technologies the FBI should adopt.  *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004) (explaining that "injecting the judge into day-to-day agency management" and "pervasive oversight by federal courts over the manner and pace of agency compliance with [] congressional directives is not contemplated by the APA").

Plaintiff's argument that the Policy offers insufficient guidance with respect to non-email electronic communications is similarly unconvincing.  The Policy makes clear that content, not form, determines what constitutes a record.  *See* Policy § 4.2.  The Policy provides overarching definitions of transitory records, nontransitory records, and nonrecords that clearly apply to all electronic communications, including text messages.  *See id.* §§ 4.3–4.5.  Plaintiff takes no issue with the scope of these definitions, nor does the amended complaint allege that they "do not adequately describe the material that must be retained as 'records' under the FRA."  *Armstrong*,

---

[7] The amended complaint cites a declaration created for another case to support the allegation that emails are automatically incorporated into FBI filing system.  Am. Compl. ¶ 15 (citing Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 12, ECF No. 19-2, *Danik v. U.S. Dep't of Justice*, No. 17-cv-1792 (D.D.C. Aug. 9, 2019)).  However, this source does not state that emails are automatically incorporated.  *See* Seidel Decl. ¶ 12 ("While some FBI communications are completed directly in and automatically integrated into FBI filing systems, text messages are not.").

924 F.2d at 293.  In the same vein, Plaintiff does not allege that the Policy inadequately describes what a non-email electronic communication is.  The Policy relies on FBI personnel to identify nontransitory records that must be imported into the recordkeeping system regardless of form; this reliance on personnel exists for both non-email electronic communications and electronic communications.  *See* Policy §§ 4.8.14, 4.8.17.  Rather than grapple with the Policy as a whole— which is surprising given that it is attached to the amended complaint—Plaintiff cherry picks from one section and then calls the Policy "grossly lacking."  Pl.'s Opp'n at 5.  Moreover, Plaintiff points to no source of law that supports its position that relying on FBI personnel to identify and preserve records (rather than fully automated procedures) makes the FBI's recordkeeping policy inadequate under the FRA.[8]  To the extent Plaintiff challenges individual FBI employees' decisions regarding whether to preserve or destroy text messages, that claim is not cognizable under *Armstrong*.  *Armstrong*, 924 F.2d at 294; *Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency*, 67 F. Supp. 3d 23, 33 (D.D.C. 2014) ("[Plaintiff] cannot challenge EPA's decision to destroy text messages by casting its claim as a challenge to an illusory record- keeping policy.").

While Plaintiff added some new factual allegations to its amended complaint, they are not "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555. Plaintiff cites no source of law that suggests that, even if all its factual allegations are accepted as true, the Policy fails to comply with the FRA or applicable regulations.  Accordingly, the Court finds that Plaintiff has failed to state a proper claim and grants the FBI's motion to dismiss.

---

[8] Plaintiff also does not allege that the FBI has an unofficial policy that instructs FBI personnel to destroy non-email electronic records.  *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 53 (D.D.C. 2019) (explaining that courts may review "an agency's unofficial, *de facto* policy of refusing to create records").

**V.  CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 16) is **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  September 11, 2020                                                RUDOLPH CONTRERAS
                                                                                         United States District Judge